**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────────

**UNITED STATES OF AMERICA,**

                              **Plaintiff,**                              **05-CR-59A(Sr)**

**v.**

**WELTON L. MILES, CYRUS Q. BENNING,**
**and CHRISTOPHER J. THOMAS,**

                              **Defendants.**

─────────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

         This case was referred to the undersigned by the Hon. Richard J. Arcara,

in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report

upon dispositive motions.  Dkt. #14.


## PRELIMINARY STATEMENT

         The defendants Welton L. Miles, Cyrus Q. Benning and Christopher J.

Thomas are charged in a five count Indictment with conspiracy to possess cocaine

base with intent to distribute, in violation of Title 21 U.S.C. § § 841(a)(1) and 841

(b)(1)(A) and Title 21 U.S.C. § 846 (Count 3); possession with intent to distribute

cocaine base, in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and Title 18

U.S.C. § 2 (Count 4); and possession of cocaine base in violation of Title 21 U.S.C.

§ 844(a) and Title 18 U.S.C. § 2 (Count 5).  Dkt. #13.  Welton Miles (Count 1), and

Cyrus Q. Benning (Count 2), are also charged as felons in possession of ammunition,

namely one hundred ninety-four (194) CCI Mini Mag .22 Caliber long rifle cartridges and ten (10) 16 gauge Remington rifled slugs, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Dkt. #13.

Currently before the Court are the defendants' motions to suppress.  Dkt. ##17, 18 & 19.  For the following reasons, it is recommended that defendant's motions be denied.

## FACTS

On December 9, 2004, Detective Paul Sojda of the City of Lackawanna Police Department appeared before the Hon. Frederic J. Marrano, J.C.C., along with a confidential informant who testified on the record, under oath, *in camera,* regarding information that the informant "did exchange guns for crack cocaine within the last ten days." Dkt. #22, Exh. A.  As a result of this appearance, Judge Marrano issued a search warrant authorizing a search of the upper apartment at 44 Smith Drive, Lackawanna; of the person identified as "Rick B/M 5'9" slender build;" and of any person at the apartment for cocaine, drug records, money as proceeds from drug transactions, drug paraphernalia, and any personal papers or documents identifying the owner of the premises or property seized and the seizure of seizure of same.  Dkt. #22, Exh. A.  The warrant was executed at approximately 8:30 p.m. on December 9, 2004. Dkt. #22, Exh. A.  One hundred ninety-four (194) CCI Mini Mag .22 Caliber long rifle cartridges and ten (10) 16 gauge Remington rifle slugs, *inter alia*, were seized. Dkt. #22, Exh. A.

On December 10, 2004, a confidential informant working on behalf of the

Southern Tier Regional Drug Task Force ("STRDTF"), made arrangements to purchase

2 ounces of crack cocaine at the Ames Plaza located off of Route 16 in the Town of

Yorkshire, New York. Dkt. #1, ¶ 5.  Officers of the STRDTF surveiled the location and

observed the arrival of a 1998 Lincoln Navigator automobile.  Dkt. #1, ¶ 5.  Defendant

Thomas was driving the Lincoln Navigator automobile, defendant Benning was the front

seat passenger, and defendant Miles was in the back seat on the passenger's side.

Dkt. #1, ¶ 5.  A woman was in the back seat on the driver's side.  Dkt. #1, ¶ 5.

The confidential informant approached the vehicle and conversed with

defendant Benning, at which time "a take down" was ordered.  Dkt. #1, ¶ 6.  Following

the arrest of the individuals in the Lincoln Navigator automobile, and during the

transport of the female passenger to the New York State Police barracks, the female

passenger "indicated to New York State Police Department Senior Investigator Walter

Mackney that she was carrying[1] the controlled substances which had been give to her

by her boyfriend, Welton L. Miles a/k/a/ 'Rick.'"  Dkt. #1, ¶ 7.  The substance, weighing

approximately 24 grams, field tested positive.  Dkt. #1, ¶ 7.

**Motion to Suppress Drugs**

The defendants seek suppression of physical evidence seized from the

female passenger, *to wit*, 24 grams of crack cocaine, following her arrest as a

passenger in the Lincoln Navigator automobile.  Dkt. ##17, 18, 19.

---

[1] Her statement indicates that defendant Miles gave her the drugs before they arrived at the plaza and instructed her to place them within her body.  Dkt. #27, Exh. A.

Defendant Thomas argues that, as the driver of the Lincoln Navigator automobile, with discretion to invite or exclude any passenger from the vehicle, he had a reasonable expectation of privacy in the vehicle and the right to suppression of "evidence seized from any individual inside the vehicle."  Dkt. #17, pp.21-24; 25 & 29. In other words, defendant argues that "because he had a reasonable expectation of his privacy in the interior of his vehicle, the officers had no right to seize the defendant's vehicle and to search the other occupants."  Dkt. #17, p.23.

Defendant Miles argues that suppression is warranted based upon the government's failure to timely disclose information pertaining to the reliability of the confidential informant or the justification for the warrantless arrest and subsequent search of the occupants of the Navigator automobile.  Dkt. #18, pp.15-16; 20 & 27. Specifically, defendant Miles asserts that "[a]t the time the Lincoln Navigator automobile was stopped and the occupants were arrested, there was no probable cause to arrest Welton Miles." Dkt. #34, p.1.   Defendant Miles also argues that he possessed a reasonable expectation of privacy in the female passenger's body because, according to the government, Miles gave the drugs to the female passenger and directed her to hold them in a place that he believed the police would be unlikely to search.  Dkt. #27, p.3.

Defendant Benning argues that a hearing is necessary to determine whether the officers possessed probable cause for the arrest of the defendants because the disclosures thus far indicate nothing more than that "a take down was

directed with respect to the vehicle" after a confidential informant who had "made arrangements to purchase 2 ounces of crack cocaine" approached the Lincoln Navigator automobile and engaged in "conversation with Benning, the front seat passenger." Dkt. #19, pp.5-7.   Should it be determined that probable cause to arrest the passengers was lacking at the time that the "take down was directed with respect to the vehicle," defendant Benning argues that the subsequent search and seizure of the drugs from the female passenger would be without probable cause, necessitating suppression. Dkt. #19, p.6.  Defendant Benning also argues that the search of the female passenger was too remote, in terms of both time and place, to be considered incident to the arrest.  Dkt. #39.

The government responds that there is no basis to suppress the drugs or for a suppression hearing, because none of the defendants can claim a legitimate expectation of privacy in the female passenger's "disgorgement of a quantity of crack cocaine." Dkt. #30, ¶ 10.

"It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993).

> The established principle is that suppression of the product
> of a Fourth Amendment violation can be successfully urged
> only by those whose rights were violated by the search itself,
> not by those who are aggrieved solely by the introduction of
> damaging evidence.  Co-conspirators and codefendants
> have been accorded no special standing.

*Id., quoting Alderman v. United States*, 394 U.S. 165, 171-72 (1969).  In other words,

> Fourth Amendment rights are personal rights which . . . may
> not be vicariously asserted.  A person who is aggrieved by
> an illegal search and seizure only through the introduction of
> damaging evidence secured by a search of a third person's
> premises or property has not had any of his Fourth
> Amendment rights infringed.  And since the exclusionary rule
> is an attempt to effectuate the guarantees of the Fourth
> Amendment, it is proper to permit only defendants whose
> Fourth Amendment rights have been violated to benefit from
> the rule's protections.

*Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (internal quotation, citations & footnote

omitted).


"[I]n order to claim the protection of the Fourth Amendment, a defendant

must demonstrate that he personally has an expectation of privacy in the place

searched, and that his expectation is reasonable; *i.e.*, one that has 'a source outside of

the Fourth Amendment, either by reference to concepts of real or personal property law

or to understandings that are recognized and permitted by society.'" *Minnesota v.

Carter*, 525 U.S. 83, 88 (1998), *quoting Rakas*, 439 U.S. at 143-44 & n.12.  Thus, it is

possible "for a defendant to prove that the police acted illegally, and yet fail to prove

that his own privacy interest was affected."  *Rawlings v. Kentucky*, 448 U.S. 98, 112

(1980) (Blackmun, J., concurring).


In *Rakas v. Illinois,* for example, the United States Supreme Court upheld

the denial of defendants' motion to suppress a rifle discovered under the front

passenger seat and rifle shells discovered in the locked glove compartment of an

automobile in which they were passengers without any determination as to "whether

there was probable cause for the search and seizure," because defendants did not claim ownership of the rifle or shells and had no legitimate expectation of privacy in the area searched.  439 U.S. at 131.  Similarly, in *Rawlings v. Kentucky*, the United States Supreme Court did not consider whether the scope of the search warrant included the purse from which the drugs were seized, or whether the smell of marihuana provided probable cause to search the purse, but rested its decision solely on the ground that the defendant, who claimed ownership of the drugs he had deposited in an acquaintance's purse, failed to prove that he had a legitimate expectation of privacy in that purse.  448 U.S. at 104.  In *Minnesota v. Carter*, the United States Supreme Court determined that it "need not decide whether the police officer's observation" of defendants putting a white powder into bags, which was made by looking through a closed blind of a ground floor apartment, "constituted a 'search'" because the defendants "had no legitimate expectation of privacy in the apartment."  525 U.S. at 91.

Regardless of the legality of the seizure of the occupants of the Lincoln Navigator automobile, none of the defendants in the instant case can demonstrate the requisite expectation of privacy in the place where the drugs were concealed, *to wit*, within the person of the female passenger.  *See United States v. Haqq*, 278 F.3d 44, (2d Cir. 2002) (vacating district court order granting motion to suppress guns discovered in suitcase after determining that the defendant had an expectation of privacy in a shared apartment in which the suitcase was located on the ground that suppression would only be warranted if the defendant had a reasonable expectation of privacy in the suitcase).  Thus, it is recommended that defendants' motions to suppress be denied.

**Validity of Search Warrant for 44 Smith Street**

By Decision and Order dated February 9, 2006, the Court granted defendant Miles' motion for an *in camera* review of the *in camera* testimony presented to Judge Marrano in support of the search warrant.  Dkt. #42.  Specifically, defendant asks the Court to determine the reliability of the confidential informant and the extent to which the informant's allegations were corroborated by investigatory surveillance.  Dkt. #18, pp.11-13.

"In determining what constitutes probable cause to support a search warrant when the warrant is based upon information obtained through the use of a confidential informant, courts assess the information by examining the 'totality of circumstances' bearing upon its reliability."  *United States v. Smith*, 9 F.3d 1007 (2d Cir. 1993), *citing Illinois v. Gates*, 462 U.S. 213, 230-31 (1984) *and Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates*, 462 U.S. at 238.  "A magistrate's determination of probable cause should be paid great deference by reviewing courts."  *Smith*, 9 F.3d at 1012.  Thus, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.  *Gates*, 462 U.S. at 238-39.

-8-

Upon review of the recording of the testimony of Det. Paul Sojda and the confidential informant before Judge Marrano, the Court is satisfied that the warrant is supported by probable cause. Det. Sojda and the confidential informant were both placed under oath. The confidential informant's testimony was based upon personal knowledge of events which transpired in temporal proximity to the warrant application and contained admissions against his own interests. Judge Marrano observed the confidential informant's demeanor and questioned his motivation. In addition, Det. Sojda proffered independent corroboration of significant details of the confidential informant's testimony.

Even if the warrant application is not supported by probable cause, suppression of evidence obtained pursuant to a search warrant is an appropriate remedy only if law enforcement's reliance upon the search warrant was objectively unreasonable, *i.e.*, the officer lacked "objective good faith" in the validity of the warrant. *See United States v. Leon*, 468 U.S. 897, 923 (1984); *United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995). In the instant case, however, there is nothing to suggest that Det. Sojda's reliance upon the warrant was unreasonable. Det. Sojda presented the confidential informant to Judge Marrano for examination; Judge Marrano questioned the confidential informant's basis of knowledge and motivation and questioned Det. Sojda regarding his investigation and the extent to which the information presented to him had been corroborated by other sources; the information Det. Sojda presented to Judge Marrano provides at least an indicia of probable cause; and the defendant does not challenge the face of the warrant itself. *Cf. Cancelmo*, 64

F.3d at 807.  Accordingly, even if Judge Marrano's finding of probable cause could be deemed erroneous, suppression would not "logically contribute to the deterrence of Fourth Amendment violations" and would not, therefore, be appropriate.  *Leon*, 468 U.S. at 921.


Scope of Search Warrant for 44 Smith Street

Regardless of the validity of the warrant, the defendant asserts that the ammunition should be suppressed because its seizure exceeded the scope of the warrant, which sought permission to seize cocaine and drug related paraphernalia.  Dkt. #18, p.13.


The government responds that the police officers properly seized contraband in plain view during the execution of that warrant.  Dkt. #30, ¶ 9.


The plain view exception to the Fourth Amendment warrant requirement "authorizes seizure of illegal or evidentiary items visible to a police officer whose access has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity."  *Illinois v. Andreas*, 463 U.S. 765, 771 (1983).   In accordance with this exception, the warrantless seizure of an item is justified where: (1) the police have lawful access to the place from which the item can be plainly viewed; (2) the item seized is in fact in plain view at the time it is discovered; and (3) it is immediately apparent to the police at the time of discovery that the item constitutes evidence of, an instrumentality of, or fruit of, a crime.  *United States v. Yu*,

755 F. Supp. 578, 581 (S.D.N.Y. 1991), *citing Horton v. California*, 496 U.S. 128, 136

(1990).   To meet the "immediately apparent" standard, police officers must have

probable cause to believe that an object in plain view is contraband without conducting

some further search of the object.   *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993);

*United States v. Padilla*, 986 F. Supp. 163, 169 (S.D.N.Y. 1997).


       In the instant case, Judge Marrano's warrant authorized the police officers

to be present in the apartment where the ammunition was discovered.   The scope of

the warrant, which permitted the officers to search for cocaine, drug records, money as

proceeds from drug transactions, drug paraphernalia, and any personal papers or

documents identifying the owner of the premises or property seized, encompassed any

container in which ammunition could be stored.  In addition, the police officers had

probable cause to believe that the ammunition discovered during the course of the

search "was connected with criminal activity"  because "ammunition is a recognized tool

of the drug-dealing trade." *United States v. Gamble*, 388 F.3d 74, 77 (2d Cir. 2004)

(plain view doctrine applied where ammunition clip was found in dresser drawer during

the execution of a search warrant for drugs and drug paraphernalia).


<u>**CONCLUSION**</u>

       For the reasons set forth above, it is **RECOMMENDED** that defendants'

motions to suppress evidence be **DENIED**.  Dkt. ###17, 18 & 19.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and

the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

/s/ H. Kenneth Schroeder, Jr.

_____
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

DATED:     **Buffalo, New York**
           **March  3 , 2006**